1

1        IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF HAWAII

3

4   UNITED STATES OF AMERICA,        ) CRIMINAL NO. 02-00040HG
                                     )
5                  Plaintiff,        )
                                     )
6        vs.                         )
                                     )
7   (02) LOVINA FARMER,              )
                                     )
8                  Defendant.        )
    _____)
9

10

11            TRANSCRIPT OF PROCEEDINGS

12        The above-entitled matter came on for hearing on

13   Friday, May 13, 2005, at 2:43 p.m., at Honolulu, Hawaii,

14   BEFORE:        THE HONORABLE HELEN GILLMOR
                    Chief Judge, United States District Court
15
     REPORTED BY:   STEPHEN B. PLATT, RMR, CRR
16                  Official U.S. District Court Reporter

17
     APPEARANCES:   BEVERLY WEE SAMESHIMA, ESQ.
18                  U.S. Attorney's Office
                    300 Ala Moana Blvd., Suite 6100
19                  Honolulu, Hawaii  96813

20                          Attorney for the Government

21
                    RICHARD T. PAFUNDI, ESQ.
22                  Law Office of Richard T. Pafundi
                    404 Hawaii Tower
23                  88 Piikoi Street
                    Honolulu, Hawaii  96814
24
                            Attorney for the Defendant
25

2

```
 1   FRIDAY, MAY 13, 2005                        2:43 P.M.

 2                        -oo0oo-

 3            THE CLERK:  Criminal Number 02-40, defendant number

 4   two, the United States of America versus Lovina L. Farmer.

 5            This case is called for sentencing and hearing on

 6   defendant's motion for downward departure.

 7            MS. SAMESHIMA:  Good afternoon, Your Honor.

 8            Beverly Wee Sameshima on behalf of the United

 9   States, together with Doug Palmer, Special Agent of the Bureau

10   of Immigration & Customs Enforcement.

11            THE COURT:  Good afternoon.

12            MR. PAFUNDI:  Good afternoon, Your Honor.

13            Richard Pafundi appearing on behalf of Lovina

14   Farmer.

15            She is also present.

16            THE COURT:  Good afternoon.

17            Now, Ms. Farmer, have you reviewed the presentence

18   report and addendums with your attorney?

19            THE DEFENDANT:  Yes.

20            THE COURT:  You have?  Okay, thank you.

21            You may be seated.

22            I've received three additional letters from your

23   children -- two from your children and one from LeAnn Fu.  And

24   the court has reviewed them.

25            Now, objections to the presentence report,
```

1    Mr. Pafundi?

2           MR. PAFUNDI:  Your Honor, due to the circumstances,

3    what we did was, we filed a blanket objection to the

4    presentence report, in that defendant no longer concedes that

5    any of the information contained therein attributed to her,

6    her statements, is valid or true.

7           And that was the subject of our motion to withdraw

8    the guilty plea last week.

9           And that's the basis for the blanket objection to

10   all the factual information contained in the PSI.

11          THE COURT:  Well, I have denied the motion to

12   withdraw the plea, and I am relying on her statements made at

13   the time of the plea, because they were made under oath, and I

14   have found that she has not put forward a just and reasonable

15   reason why she should be allowed to withdraw that plea.

16          So we have that information from her own admissions

17   at the plea.  So --

18          MR. PAFUNDI:  And that information, Your Honor -- I

19   reviewed the plea agreement and the transcript of the change

20   of plea proceedings -- she did admit to possession with intent

21   to distribute 264.1 grams of methamphetamine.

22          Now, the PSI does, however, attribute more than that

23   to her, 1,347.66 grams, which would lead to a base offense

24   level proposed of 36.

25          Now, if the court were just to go with the admitted

4

1     amounts that the defendant participated in possession and

2     distribution of, my understanding is that that would be a base

3     offense level of 34.

4                THE COURT:  Okay.

5                And I take it your position is, otherwise the

6     government has to put on proof with respect to the remainder?

7                MR. PAFUNDI:  That would be my position.

8                THE COURT:  Okay.

9                What's your position, Ms. Sameshima?

10               MS. SAMESHIMA:  Your Honor, my position is that, in

11    the plea agreement, as a part of the factual basis for the

12    plea, the defendant admitted to the other parcel, which was,

13    of course, the first parcel, in September, the drug quantities

14    and the drug amounts which constituted, in fact, 264.1 grams,

15    with a purity of 96 percent.

16               And that would be part of what she admitted to as

17    far as her responsibility for the drug amounts involved.

18               Now, if I had had notice that Mr. Pafundi was, in

19    fact, going to contest that, I might have also called the lab

20    chemist.

21               But I assume that that's part of the factual basis

22    for the plea and what she admitted to as part of the plea

23    agreement.

24               So, because there was no specific objection to that

25    portion of the PSI and the final draft, that would be my

1    position on that.

2                THE COURT:  Okay, let's go over the math here.

3                We've got the 264 that is alleged and admitted to on

4    Page 5 and 6 of the plea agreement, part of paragraph eight.

5                Now, what else is admitted in the plea agreement,

6    from your point of view, Ms. Sameshima?

7                MS. SAMESHIMA:  Okay, I'm sorry, Your Honor, I lost

8    the plea agreement.

9                THE COURT:  Attached to the PSI.

10               MS. SAMESHIMA:  (Perusing documents.)

11               Well, Your Honor, I guess it's not in the plea

12   agreement -- (perusing documents).  January 17th --

13               Oh, I'm sorry.  Here.  At paragraph eight, the

14   bottom of paragraph eight, the substances --

15               THE COURT:  What letter?

16               MS. SAMESHIMA:  Uh --

17               THE COURT:  Paragraph eight goes on for several

18   pages.

19               MS. SAMESHIMA:  Okay.  Page 6.

20               THE COURT:  Yes?

21               MS. SAMESHIMA:  And it's the remainder of

22   paragraph H.

23               So, a total of 264.1 grams of d-methamphetamine.

24               And then, at the bottom of that paragraph, on

25   Page 6, additional quantities based on the package that had

1    arrived in September of 2001, with the following varying

2    purities and weight.

3              And there is a list there on Page 6 of 85.8 grams,

4    97.4 grams, 101.3 grams, and 98 grams, which I believe the

5    PSI has calculated for the pure net weight in paragraph...

6              THE COURT:  55?

7              MS. SAMESHIMA:  (Perusing documents.)

8              Yes.  I believe so, Your Honor.

9              (Perusing documents.)

10             Correct, Your Honor.

11             MR. PAFUNDI:  Your Honor, the way I read that

12   paragraph is that, up at the top of the page --

13             THE COURT:  Which paragraph are we talking about?

14             MR. PAFUNDI:  Paragraph --

15             THE COURT:  And which document?

16             MR. PAFUNDI:  Okay.

17             (Perusing documents.)

18             Looking at the plea agreement, paragraph eight,

19   Page 6.

20             THE COURT:  H.  8-H.

21             MR. PAFUNDI:  Yes, Your Honor.

22             THE COURT:  Yes.

23             MR. PAFUNDI:  At the very top, it says, defendant

24   does not dispute the results of the analysis conducted by the

25   forensic chemist of the DEA Southwest Laboratory, that the

7

1    parcel which was received by the Christians on January 17,

2    2002, contained 264.1 grams of d-methamphetamine, with a

3    purity of 96 percent.

4          Then it goes on to say that there was also some

5    other drugs that were analyzed, but it doesn't say anything

6    about conceding that they are attributable to the defendant.

7          It says the forensic chemist at the DEA Southwest

8    Laboratory also analyzed the following controlled substances

9    recovered from the parcel which had been sent to Lovina

10   Farmer's son from the Philippines.

11         THE COURT:  Okay.

12         Just to save time, Mr. Pafundi, are you just

13   reacting to what she said and you truly have gone through this

14   and you can't connect up the two transactions, or are you just

15   hoping for some inconsistency there in that paragraph?

16         Because, as you probably are aware, this case

17   started out with two different indictments, two different

18   transactions, and then there were superseding indictments,

19   which combined them; and the counts in the last one that she

20   pled to contain both charges, in terms of those two different

21   transactions.

22         So we're going to have to go through this and see,

23   since you're taking this position now.  And so --

24         MS. SAMESHIMA:  Your Honor, let me look at the

25   second superseding.

1           Because I believe what we did in the second

2    superseding was to add a conspiracy, which involved both of

3    those parcels --

4           THE COURT:  Okay.

5           MS. SAMESHIMA:  -- and, therefore, if she pled to

6    the conspiracy, that's it.

7           THE COURT:  Yeah.

8           MS. SAMESHIMA:  (Perusing documents.)

9           And there's another theory, Your Honor, and that is

10   that, if not, that would be relevant conduct.

11          And it seems to me --

12          THE COURT:  Yeah, I think the relevant conduct, I

13   think, is where Mr. Pafundi assumes it is, and is just saying

14   she hasn't agreed to the relative conduct.

15          So then it's up to the court to make a decision as

16   to the relevant conduct, and it's an issue of what do I have

17   before me to make that decision.

18          MS. SAMESHIMA:  Your Honor, I'm embarrassed.  I only

19   brought two of the nine files, and I believe my other files

20   have the second superseding indictment.

21          Oh.  Mr. Hisashima has it.

22          May I approach, Your Honor?

23          THE COURT:  Yes.

24          MS. SAMESHIMA:  (Retrieving documents from the

25   courtroom manager.)

9

1          (Perusing documents with case agent.)

2          MR. PAFUNDI:  And, yes, Your Honor, without

3    conceding too much of attorney-client privilege, confidential

4    communication, basically I was asked to make this argument,

5    that, you know, in her mind, she had admitted at the time to

6    the 264.1.  That was our understanding.  So...

7          And in light of the prior posture of this case, it's

8    the reason why, you know, I filed this blanket denial of all

9    the facts contained in the PSI.

10         To do otherwise would compromise her earlier

11   position.

12         THE COURT:  Sure.  I understand.

13         I'm just trying to make our way through this thicket

14   in terms of with this new idea on the table.

15         MR. PAFUNDI:  And, Your Honor, if you would look to

16   the transcript of the actual change of plea proceedings, the

17   proffer was, by the U.S. Attorney, I believe strictly related

18   to the January, '02 transaction involving 264.1 grams of

19   methamphetamine.

20         That was the only drugs discussed during the change

21   of plea.

22         That's on Page 15 of the transcript.

23         MS. SAMESHIMA:  Your Honor, the second superseding

24   indictment charges from a time unknown up until January 17,

25   2002.

1                And in the overt acts, under Count One, it talks

2       about, not only the January, 2002, parcel, the one that went

3       directly to the Christians on Kauai, but also the parcel that

4       came in in September, via Ms. Farmer's son, Jaylord Medallion,

5       in San Diego, and eventually ended up on Kauai.

6                So we believe that, with respect to Count One, when

7       she pled guilty to Count One, that conspiracy, that included

8       that first parcel that came in September from the Philippines

9       via San Diego to Kauai, as well as the January parcel that

10      went directly to the Christians.

11               THE COURT:  Mr. Pafundi?

12               MR. PAFUNDI:  I'm just going with the plea agreement

13      and the transcript of the change of plea proceedings.

14               By admitting to Count One of the superseding

15      indictment, she did not necessarily admit to every single

16      factual allegations contained therein.

17               THE COURT:  Do the figures add up, Ms. Sameshima?

18               Because the amount in paragraph 63 seems to be more

19      than -- and look at 62.  It includes three additional parcels

20      for the Farmers.

21               And we've got the September 4th -- September parcel,

22      2001, containing 333.5 grams, and then the parcel seized in

23      January, which was 253.54 grams, all of methamphetamine.

24               In the light most favorable to the defendant, that

25      would be 760 grams.

1            But then if it's actual -- of actual -- was it

2    reasonably foreseeable for a total of...

3            So we're saying three parcels of the 253.

4            So we seem to have more parcels than we have

5    admissions.

6            MS. SAMESHIMA:  Your Honor, I'm sorry, I don't see

7    where there's --

8            THE COURT:  Look in paragraph 62.  Read paragraph

9    62.

10           MS. SAMESHIMA:  (Perusing documents.)

11           I see it.  Yeah.

12           THE COURT:  Yeah, okay.

13           But it may not make a difference.  Because if you

14   take the two parcels, you're still --

15           MS. SAMESHIMA:  I think it's the same guideline

16   range, Your Honor.

17           THE COURT:  If you take the two parcels, it's still

18   above 500 grams.

19           MS. SAMESHIMA:  Yeah.

20           I mean, even assuming, like you said, we don't take

21   the three that were based on the testimony of the Christians,

22   as opposed to the actual seized two parcels, it doesn't change

23   her guideline range for purposes of calculating her

24   guidelines.  It's still within the same base offense level.

25           THE COURT:  Do you agree with that, Mr. Pafundi?

1          MR. PAFUNDI:  Not really, Your Honor.  I think my

2    arguments --

3          THE COURT:  Move your mike and talk into it.

4          MR. PAFUNDI:  My argument will continue to be that

5    there's an admission of 264.1 grams of actual meth, based on

6    the colloquy between the court and the defendant at the change

7    of plea proceedings and in the memorandum of plea agreement;

8    all the other information contained in the presentence report

9    as to other parcels, etc., etc., should be irrelevant in terms

10   of calculating the sentencing guideline.

11         Now, 34 is our request.

12         Which would still lead to an enormous amount of time

13   for a first-time offender.

14         MS. SAMESHIMA:  Actually, Your Honor, I stand

15   corrected.  Actually, if we were to discount the three parcels

16   that weren't seized --

17         THE COURT:  All three parcels?

18         MS. SAMESHIMA:  Right.  Three additional parcels

19   for --

20         Then, actually, if we just count the two that we did

21   seize, that would be level -- (perusing documents) -- that

22   would be level seven --

23         THE COURT:  No.  You're --

24         MS. SAMESHIMA:  Am I getting confused here?

25         THE COURT:  You're getting confused.

1          MS. SAMESHIMA:  Am I confusing myself?  Okay.

2    I'll --

3          THE COURT:  The amount of the three parcels is

4    figured on the September parcel.

5          MS. SAMESHIMA:  Correct.

6          THE COURT:  Assuming that all three are the same.

7          So if you discount all three, including the

8    September parcel, yes, we're down to the 253.54.  Because

9    that's the January parcel.

10          And, slightly more complex than that, even.

11          Mr. Pafundi, how do you interpret paragraph 62?

12          MR. PAFUNDI:  Well, on the confusing side, with all

13    due respect, you know, the preparer of the report, I was

14    looking at the 25-  --

15          THE COURT:  Well, I'll tell you what.  We're going

16    to have the Probation Officer explain to us what they consider

17    62 to include in terms of the various parcels.

18          And you're going to speak into that microphone.

19          MS. GODINET:  Okay, Your Honor.

20          THE COURT:  You're going to move it right in front

21    of you and speak right into it.

22          MS. GODINET:  (Complying.)

23          THE COURT:  Okay.

24          MS. GODINET:  Okay, Your Honor, the two --

25          THE COURT:  Move to the microphone.  Speak into the

1    microphone.

2              MS. GODINET:  (Complying.)

3              THE COURT:  Okay.

4              MS. GODINET:  Okay.

5              The two parcels that we're considering in paragraph

6    61 is the 587.04.

7              In addition to that, there was --

8              THE COURT:  Okay, now, hang on.

9              MS. GODINET:  -- corroborating --

10             THE COURT:  Hang on.  Hang on.

11             61.

12             MS. GODINET:  Yes.

13             THE COURT:  This includes the September parcel and

14   the January parcel?

15             MS. GODINET:  Yes.

16             THE COURT:  And so you're adding those weights

17   together, for a total of 587?

18             MS. GODINET:  Correct.

19             THE COURT:  Okay.

20             So, when we get to 63 -- excuse me -- paragraph 62,

21   it's three more parcels, separate?

22             MS. GODINET:  Yes.

23             And that total for those three parcels is 760.62.

24             THE COURT:  How do you figure that?

25             MS. GODINET:  We took a reasonable conclusion that,

1    because there were two parcels, one was 333.5, the other was

2    253.54 --

3              THE COURT:  These are the parcels that exist

4    actually in 61, and so you're just -- you're splitting the

5    difference for three parcels that were never seized?

6              MS. GODINET:  Right.

7              And I'm taking the lowest amount and adding that,

8    for three parcels -- times three parcels.

9              So when you add the five parcels together, it comes

10   up to 1,347.66 grams of meth actual.

11             THE COURT:  But as to the three parcels, this is a

12   guess?

13             MS. GODINET:  Yes.

14             THE COURT:  Okay.

15             MS. SAMESHIMA:  Your Honor, we're willing to

16   actually say -- we believe -- to avoid -- I mean, just to get

17   rid of all these issues, that we think the two seized parcels

18   should be counted and they are attributable to her.

19             And therefore, that would put her still in guideline

20   level 3- -- base offense level 34.

21             THE COURT:  Okay.

22             MS. SAMESHIMA:  And then add two more for the

23   importation of methamphetamine, and she's back at level 36.

24             THE COURT:  Okay.

25             Now, in this case, which has been around since 2001,

1    I have had a trial with Mr. Christianson and facts proved at

2    the trial; I have had at least one motion to suppress, and I

3    think more -- but not that there were facts proved at that,

4    but the court is familiar with the allegations -- and I've got

5    two pleas from the other two participants:  Mr. Farmer and

6    Ms. Christianson -- Mrs. Christianson.

7             And so I have a great deal of testimony that I have

8    received with respect to this indictment.

9             And, in addition to the admissions of Ms. Farmer,

10   the court finds -- unless you can put forward some evidence or

11   testimony, Mr. Pafundi -- that I'm going to accept paragraph

12   61 as determinative of the amount of drugs that your client

13   has pled guilty to.

14            MR. PAFUNDI:  We don't plan on putting on any

15   evidence, Your Honor.

16            THE COURT:  Okay.

17            So we are disregarding the drugs outlined in

18   paragraph 62.

19            And the court finds that there were 587.04 grams of

20   methamphetamine attributable to your client, and that she has

21   admitted to that, and, in any event, even if she only admitted

22   to the first -- the January package -- there is sufficient

23   evidence before this court in this case for the court to find

24   the total that is reflected in paragraph 61.

25            So, I have resolved that issue.

1              Was there any other objection that you had,

2    Mr. Pafundi?

3              MR. PAFUNDI:  Well, I apologize to some degree for

4    kind of broadsiding the court with some more specific

5    objections when there was a blanket general objection.

6    Especially on a late Friday afternoon.

7              But since the court asked the question, if it wasn't

8    satisfied with my general blanket objection --

9              THE COURT:  Yeah, I am paring away at it.  So I am

10   trying to figure out what else I need to decide.

11             MR. PAFUNDI:  So, without, again, conceding -- she

12   is admitting, but you wanted to go back to the actual

13   admissions during the change of plea.

14             If we look at the change of plea transcript, they

15   said, well, what did you do?

16             "I went call.  I helped by calling."

17             So, theoretically, she could be subject to a

18   mitigating role for her role in this offense.

19             And if that's the case, then she wouldn't get the

20   additional two points that she got in 64.

21             THE COURT:  Unfortunately, all three of the other

22   people pleading here point the finger at her.

23             So that's not consistent with any other information

24   before the court.

25             MR. PAFUNDI:  Gotcha.

1           Apart from that, Your Honor, there are no additional

2    specific objections.

3           THE COURT:  Okay.

4           The court, it is unusual how much information the

5    court has with respect to a case such as -- you know, at

6    sentencing for a plea.

7           But there has been a trial, and I have had the

8    statements in open court of all of the other people charged.

9           So there is ample record with respect to the various

10   factors here that the court is relying on.

11          And I am relying on the plea colloquies and the

12   sentencing proceedings for the other three, and the trial,

13   with respect to Mr. Christian, in making these findings, which

14   are denied but uncontroverted.

15          So, with the exception of paragraph 62 and the

16   modification to paragraph 63, the court is adopting the

17   factual statements contained in the presentence investigation

18   report as its findings of fact.

19          And at this time, the court is placing the

20   presentence report in the record under seal.  If an appeal is

21   taken, counsel on appeal may be permitted access to the sealed

22   report with the exception of the "recommendations" section.

23          And the court finds that the plea agreement

24   satisfies the need for an adequate reflection of the

25   seriousness of the actual offense behavior, and that accepting

1    the plea agreement will not undermine the statutory purposes

2    of sentencing.  And it is accepted.

3            Now, turning to the Probation Officer's conclusions

4    as to the applicable guidelines, there are two addendums.

5            And the latest addendum, the court finds the total

6    offense level is 38, the criminal history category is one.

7            The guideline provides for custody of 235 to 293

8    months.  Defendant is not eligible for probation, the

9    supervised release of five years; fine range of $25,000 to

10   $4 million.  Restitution is not applicable.  And there is a

11   special assessment of $100.

12           Now, these guidelines are advisory.  The court is

13   consulting the advisory guidelines because they provide a

14   number of functions.

15           One is to assist with continuity of sentencing

16   across the country.

17           And another reason is that the guidelines provide a

18   means of ensuring that the court considers all the relevant

19   factors with respect to this defendant and this crime.

20           And the court notes that it is assisted by the data

21   gathering, policy statements and other information provided by

22   the Sentencing Commission, and will use the valuable

23   information that is provided to the court from that body and

24   the publications of that body.

25           Now, this is your opportunity to address the court,

1   Mr. Pafundi, with respect to sentencing.

2            MR. PAFUNDI:  Well, Your Honor, I think rarely have

3   I been in a situation where a first-time offender is looking

4   at this much time for a first offense.

5            And, frankly, I am a little uncomfortable with the

6   amount of months that the defendant is looking at.

7            There was certainly an effort to turn this thing

8   around in a different direction, in terms of cooperation,

9   which was not forthcoming.  So --

10            THE COURT:  From your client.

11            MR. PAFUNDI:  So we're stuck here -- at least I'm

12   stuck, actually -- in trying to ask for a downward departure

13   based on substantial assistance, request safety valve --

14            THE COURT:  Well, you don't have any substantial

15   assistance; correct?

16            MR. PAFUNDI:  I don't.

17            THE COURT:  And you don't have a colorable argument

18   for that; right?

19            MR. PAFUNDI:  That's correct.

20            THE COURT:  And your client has gotten rid of her

21   two points for acceptance or responsibility.

22            I'm interested to hear your argument, Mr. Pafundi.

23            MR. PAFUNDI:  Your Honor, I'm going to have to

24   resort back to this defendant being a first-time offender.

25            She's in a criminal history category of -- the

1  lowest category that there is.  She has no criminal history

2  points.

3         She's never experienced life in prison.  This is a

4  first-time experience.  It hasn't been a pleasant one.

5         Her husband's in jail.

6         She hasn't seen her children.  Her children are on

7  the mainland.

8         She is subject to deportation back to the

9  Philippines, exclusion from the United States forever.

10        I mean, I can't imagine a worst-case scenario.

11        She's not a young lady.  Every time I have talked to

12  her, she's been in tears.

13        If she were to get anywhere near the sentencing

14  guideline range, I must say that I, frankly, don't think that

15  I've done my job.

16        The co-defendants in this case have been sentenced:

17  Donna Christian, 46 months; Douglas Christian, 64 months; and

18  her husband received 135 months.

19        So, in this particular case, with the guidelines no

20  longer being mandatory and advisory, this is an opportunity

21  for the court to show why the recent U.S. Supreme Court

22  decisions were, in effect, good ones, so that the court has,

23  in reviewing all the circumstances of the case, much wider

24  discretion which should be appropriately used in this case,

25  given the fact that, like I said, this is a first-time

1    offender.

2              If the court were to sentence my client, Lovina, to

3    a sentence that equates that of her husband, perhaps there

4    would be some fairness and equity here.  But anything more

5    than that would seem to really go beyond the deterrent

6    purposes of sentencing.

7              THE COURT:  I'm interested to hear how I figure in,

8    from your point of view, his cooperation and the points he got

9    off for that and the points he got off for acceptance of

10   responsibility.

11             Do those two factors figure in this at all?

12             MR. PAFUNDI:  Well, sure they do.

13             I would like to be in the same situation as him in

14   making these arguments, and his attorney in making those

15   arguments.

16             My hands are tied to some extent.

17             But even given her position in this case, which,

18   baffling to many, mercy should be applied by the court at this

19   time.

20             That's my best argument.

21             THE COURT:  Okay.  Okay, thank you, Mr. Pafundi.

22             Ms. Farmer, this is your opportunity to address the

23   court, and anything that you want to say with respect to your

24   plea, the crime you pled guilty to, or anything else about

25   yourself.

1          THE DEFENDANT:  Your Honor, I have been in jail for

2    14 months.  I just want to be with my kids (crying) -- because

3    -- (incomprehensible).

4          THE COURT:  The court reporter can't take down what

5    you're saying.  You have to calm down and say it clearly.

6          THE DEFENDANT:  Your Honor, I have been in jail for

7    14 months, and I just want to be with my kids.  Because --

8    (incomprehensible).

9          Give me one more chance.

10          THE COURT:  Thank you.

11          Ms. Sameshima?

12          MS. SAMESHIMA:  Yes, Your Honor.

13          Of course it's the government's position that she

14    should be sentenced somewhere within the guidelines.

15          And here's why, Your Honor.

16          And now that the guidelines are purely advisory, of

17    course the court has very wide discretion.  And I have seen

18    the court exercise that discretion and exercise leniency in

19    the appropriate case.

20          But in this case, the defendant is the one that held

21    the keys to whether the court should exercise its discretion.

22          In this case, it was the defendant who could have

23    either been complete and truthful about the offense and

24    qualify for safety valve, to attempt to provide some

25    assistance to the government, and to take responsibility for

1    her actions.

2              And it was only her actions, alone, that got her to

3    even lose the two additional points for acceptance of

4    responsibility.

5              She's demonstrated that the purposes for sentencing

6    have not been met here.

7              One of the things that the court still looks at, in

8    Section 3553, to some extent, is whether there is a deterrence

9    factor here; whether the defendant has shown some remorse.

10             Yes, she's been in jail a long time.  And you would

11   think that that time in jail could have led her to some

12   realization that, hey, I've done wrong, let me accept that and

13   move on from here.

14             But we don't have that, at all.  We have quite to

15   the contrary.

16             She was willing to take the stand last week and

17   blame her predicament on everybody else:  Her former

18   attorneys, even her current attorney; everybody but herself.

19             And I would just note, Your Honor, that, as far as

20   her role in this offense conduct, she really was the key.

21   Because she was the link to the source of the drugs.  The

22   drugs came from the Philippines, and it was her contacts there

23   that brought the drugs over.

24             And I would also note that she was willing to get

25   her son, Jaylord Medallion, in San Diego, involved, by having

1    the package sent to him first, and then directing him to send

2    it to Kauai.

3             So I say that, for all the reasons that are set

4    forth in 3553, and the purposes of the guidelines, she should

5    be sentenced within the advisory guidelines in this case.

6             THE COURT:  Thank you.

7             Now, as I said earlier, I have been dealing with

8    this case since 2001.  And it has been one of the most aired

9    cases in court that I have had in the criminal area, in the

10   sense of the four different defendants, the two different

11   complaints, and very thorough motions that have been filed on

12   behalf of the various defendants:  Motions to sever, motions

13   to suppress; any other number of motions.

14            So the facts in this case have been aired before me

15   in a myriad of ways.

16            And what I keep seeing from Ms. Farmer is a

17   hardheadedness and an inability to evaluate what is best for

18   her, time and time again.  It's as if she has just a desire to

19   shoot herself in the foot.  I mean, it's unerring.

20            And I don't know what the motivating factor is.

21            I do not believe that, in any way, shape or form, it

22   is innocence.  That's not what is happening here.

23            There is nothing that tells me that you are innocent

24   of these charges.  Everything I have seen for the last four

25   years has shown me that you are not innocent.

1          But I think what's really going on is, there is a

2     lack of sophistication, and a stubbornness, and a belief that,

3     if you just tough it out long enough, this will go away.

4          And I think that explains the recent gyrations, in

5     terms of the attempt to withdraw the guilty plea, over a year

6     and a half later, or about a year and a half later, and the

7     willingness to get on the stand and lie about what happened,

8     and raise issues that are really non-issues.

9          And I think that it is a little different than a

10    calculated response.  I don't really think it's so much an

11    intelligent, manipulative, calculated response, as a stubborn

12    reluctance to deal with reality.

13         I mean, it just isn't something where you have

14    listened to anybody who's tried to help you.

15         I know your attorneys have tried to help you, both

16    of them have tried to help you, and told you, if you do this,

17    that will happen.

18         And I think that you, for some reason, just think

19    that, if you fight hard enough, this will all go away.  And

20    that's not what happens.

21         Now, I have to compare you, when you are at 235 to

22    293 months, to other people who fall into those categories.

23         And, while you are willing to lie on the stand and

24    you are willing to disregard any good advice you get from your

25    attorneys, I don't think you are remotely as much of a danger

1    to society as people who usually fall into these categories.

2              I look at you and I look at people who have big drug

3    distribution operations and the ability to bring in large

4    drugs.  You didn't pull it off.  You know, you were actually a

5    fairly small cog in the machine, even though you were probably

6    the biggest cog in the machine, in terms of the four in this

7    indictment.

8              So, while I lament your inability to do things to

9    help yourself, I can't equate you with the 235 to 293 months.

10             It would be, in my mind, somewhat spiteful of me to

11   say, if you're going to shoot yourself in the foot this many

12   times, you have to take your medicine.  That just doesn't seem

13   to be what would be a fair and balanced way of looking at

14   this.

15             Though the difficulty that the lying, etc., causes

16   is of concern to the court.

17             Lying in court has to get some bad results.  It

18   can't be ignored.  Bad things have to happen when you raise

19   your hand and take the oath and lie.  There have to be

20   repercussions for that.

21             So, I am going to take into consideration what your

22   husband got, but I have to add something on because of the

23   lying, and the fact that you just won't cooperate and get the

24   benefits that he got.

25             So I am going to give you 145 months.

1          And I think that is -- given the fact that you

2   haven't a previous record -- that is an ample sentence in this

3   situation.

4          But I think if there is one overriding lesson here,

5   it could have been different if you could have brought

6   yourself to listen to the people, your attorneys, etc., who

7   were attempting to assist you.

8          So, 145 months.  Five years' supervised release.

9          I'm not going to impose a fine because I don't think

10  that you're in a position to pay it, and especially with 145

11  months.  Restitution isn't appropriate.

12          Special assessment of $100.

13          And here are the conditions:

14          One, you shall abide by the standard conditions of

15  supervision.

16          Two, you shall not commit any crimes, federal, state

17  or local.

18          Three, you shall not possess any illegal controlled

19  substances.

20          Four, you shall refrain from any unlawful use of a

21  controlled substance.  You shall submit to one drug test

22  within 15 days of release from imprisonment, and at least two

23  drug tests thereafter, as directed by the Probation Office.

24          Five, you shall cooperate in the collection of DNA,

25  as directed by the Probation Office.

1          And six, you shall participate in a substance abuse

2     program, which may include drug testing, at the discretion and

3     direction of the Probation Office.

4          Seven, you shall not possess a firearm, ammunition,

5     destructive device or any other dangerous weapon.

6          Eight, you shall comply with the requirements of the

7     Department of Homeland Security, including submitting to

8     deportation proceedings and not reentering the United States

9     without proper authorization.

10         And nine, you shall submit your person, residence,

11    place of employment or vehicle to a search conducted by the

12    U.S. Probation Office, at a reasonable time and in a

13    reasonable manner, based upon reasonable suspicion of

14    contraband or evidence of a violation of a condition of

15    supervision.

16         Failure to submit to a search may be grounds for

17    revocation.  And you shall warn any other residents that the

18    premises may be subject to search pursuant to this condition.

19         Okay, now, there is one thing I want to say to you,

20    Ms. Farmer, and you need to be aware of this:

21         If you are deported after you serve your sentence

22    and you come back into the United States without proper

23    authorization, there's a long sentence for that.

24         You need to understand that, as a deported felon,

25    coming back into the United States without proper

1    authorization -- which I don't think you will get; I just

2    don't think, given your situation -- you need to know that

3    there is probably a very long prison sentence if you get

4    caught doing that.

5             And I think that, given your attitude, that's

6    something you need to put in the back of your mind and

7    remember.

8             Okay.

9             Either counsel know of any reason why the sentence

10   as stated should not be imposed?

11            MR. PAFUNDI:  No, Your Honor.

12            MS. SAMESHIMA:  Your Honor, I just have to make a

13   record objection.

14            THE COURT:  Yes, and I appreciate that.

15            And let me advise you of your right to appeal:

16            You may appeal your conviction if you believe that

17   your guilty plea was somehow unlawful or involuntary, or if

18   there's some other fundamental defect in the proceeding that

19   was not waived by your guilty plea.

20            You also have a statutory right to appeal your

21   sentence under certain circumstances, particularly if you

22   think the sentence is contrary to law.

23            You have entered into a plea agreement, which waives

24   some of your rights to -- well, waives your right to appeal

25   the sentence itself.

1          And such waivers are generally enforceable; but if

2     you believe the waiver is unenforceable, you can present that

3     theory to the appellate court.

4          With few exceptions, any notice of appeal must be

5     filed within ten days of judgment being entered in your case.

6          If you are unable to pay the cost of an appeal, you

7     may apply for leave to appeal in forma pauperis.

8          And if you so request, the clerk of the court will

9     prepare and file a notice of appeal on your behalf.

10         Now...

11         MS. SAMESHIMA:  Your Honor, did you assess the $100?

12         I'm sorry if I missed that.

13         THE COURT:  That's a good question.

14         MS. SAMESHIMA:  If I didn't, I do it at this time.

15         THE COURT:  Okay, thank you.  I appreciate any help

16    I can get.

17         Yes, Mr. Pafundi?

18         MR. PAFUNDI:  Your Honor, if you can make a

19    recommendation for Victorville?

20         THE COURT:  Where is Victorville?

21         THE DEFENDANT:  California, Your Honor.

22         THE COURT:  Okay.

23         THE DEFENDANT:  It's close to my kids.

24         THE COURT:  Okay.

25         MR. PAFUNDI:  I just hope that's not a high-security

1    facility.

2              THE COURT:  Anybody know?

3              (Discussion off the record.)

4              MR. PAFUNDI:  Thank you very much for the

5    consideration of our arguments.  Appreciate that.

6              MS. GODINET:  This may be old, but it says a medium

7    male facility.

8              THE COURT:  There you go.

9              Your children are in Southern California?

10             THE DEFENDANT:  San Diego, Your Honor.

11             THE COURT:  San Diego.  Okay.

12             I will recommend a facility closest to San Diego, to

13   facilitate the ability of your children to visit.  Okay?

14             Okay.

15             I am going to ask that you get drug treatment,

16   educational and vocational opportunities.

17             Is there anything further?  Counts to be dismissed?

18             MS. SAMESHIMA:  Yes, Your Honor.

19             Counts Two through Five.  We move to dismiss those

20   counts.

21             THE COURT:  Okay.

22             And the written order with respect to the withdraw

23   of the plea agreement should come out next week.

24             MR. PAFUNDI:  Okay.  Thank you, Your Honor.

25             MS. SAMESHIMA:  Thank you.

1            THE COURT:  Okay, thank you.

2            Were you in this from the beginning, Ms. Sameshima?

3            MS. SAMESHIMA:  Oh, yes, I was, Your Honor.  I sure

4       was.

5            THE COURT:  Okay, I thought so:

6            Okay, thank you.  We stand in recess.

7            THE CLERK:  Please rise.

8            Court stands recessed subject to call.

9            (The hearing in the above-entitled

10           cause was concluded at 3:27 p.m.)

11                          - - -

12

13

14

15

16

17

18

19

20

21

22

23

24

25